IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:    DERRON M. SIMON,    Case No. 07-31414-KRH
Chapter 11
Debtor.

## MEMORANDUM OPINION

Before the Court in this chapter 11 bankruptcy case is the Debtor's Objection to Certain Claims and Motion to Estimate Such Claims for Voting Purposes (the "Motion"). The Motion presents the issue whether the Debtor can separately classify three unliquidated medical malpractice claims by placing them in a class different from his other liquidated general unsecured claims. For the reasons set forth below, the Court holds that both the separate classification of the unliquidated claims and the estimation of those claims for voting purposes are proper.

Derron M. Simon (the "Debtor") filed this case initially under chapter 13 of the Bankruptcy Code on April 14, 2007. On August 22, 2007, the Debtor's case was converted to one under chapter 11. The Debtor listed eighteen creditors in the schedules annexed to his bankruptcy petition. The Debtor scheduled Wells Fargo as the only secured creditor. The Internal Revenue Service, Sallie Mae Servicing, and the United States Department of Education were scheduled as priority, unsecured creditors.[1] The Debtor scheduled fourteen nonpriority, unsecured creditors. Of the fourteen nonpriority unsecured creditors, eleven involve claims that

---

[1] Sallie Mae Servicing and the United States Department of Education subsequently filed proofs of claim describing themselves as nonpriority unsecured creditors. As no objection has been filed to these proofs of claim, they will be treated as Liquidated General Unsecured Claims (as hereinafter defined) for purposes of this opinion.

are not contingent, disputed or unliquidated (the "Liquidated General Unsecured Claims").[2] Most of the debt represented by the Liquidated General Unsecured Claims derives from the operation of the Debtor's medical practice and from legal fees incurred in defending medical malpractice suits. The Liquidated General Unsecured Claims comprise $627,381.95 of the debt owed in this case. The three remaining nonpriority unsecured creditors are asserting personal injury claims against the Debtor for the Debtor's alleged medical malpractice (the "Tort Claims"). The Tort Claims were filed by Julia W. Pope, Michael K. Pawley and Vivian Jenkins (the "Tort Claimants"). The Tort Claims were pending in state court when this bankruptcy case was filed. The Tort Claims are contingent and unliquidated  The Debtor valued the Tort Claims at one dollar each in his schedule F. On the other hand, the Tort Claimants have filed proofs of claim wherein they assert damages in excess of $13,000,000.[3] No party has offered any analytic support for the dollar amount they seek to attribute to the Tort Claims.

The Debtor filed an objection to each of the proofs of claim filed by the Tort Claimants. In the Motion, the Debtor seeks to submit a chapter 11 plan of reorganization in which the Liquidated General Unsecured Claims and the Tort Claims will be placed into separate classes. The Motion also seeks to have the dollar amount of the Tort Claims estimated for voting purposes. The Tort Claimants have objected to this proposed treatment of their Tort Claims in the proposed plan of reorganization. The Court held a hearing on the Motion on January 16, 2008 (the "Hearing"), at which the Court requested the parties to file supplemental briefs on the

---

[2] Mark Rahw, who is listed as a holder of a nonpriority unsecured claim has filed a proof of claim listing himself as a secured creditor in the amount of $35,025 and a nonpriority, unsecured creditor in the amount of $21,505.88. The Internal Revenue Service also asserts a $7,212.24 nonpriority, unsecured claim. These creditors will be treated as holders of such claims for purposes of this opinion only.

[3] Julia W. Pope filed a proof of claim for $1,750,000. Michael K. Pawley filed a proof of claim for $1,700,000. The amounts asserted by these two claimants appear to be based on the statutory cap for medical malpractice claims in Virginia as set forth in Virginia Code Ann. § 8.01–581.15. Vivian Jenkins has filed two apparently identical proofs of claim (Nos. 8 and 14) for $10,000,000 each. For purposes of this analysis the Court will ignore the seemingly duplicative proof of claim.

2

issues presented in the Motion and at the Hearing. Having reviewed the briefs filed by each of the parties, the Court finds no need for further oral argument. Based on the pleadings, the arguments of counsel at the Hearing, and the briefs of the parties, the Court finds that separate classification of the Tort Claims and the Liquidated General Unsecured Claims is appropriate and that the estimation of the Tort Claims is necessary in order to permit the Tort Claimants to be allowed to vote on the Debtor's plan.

Sections 1121 through 1124 of the Bankruptcy Code govern the plan formulation process. The proponent of a plan of reorganization has substantial flexibility to structure a plan that will both address and resolve the problems that drove the debtor to seek the protection of the bankruptcy court. There is no statutory limitation on what a plan may include in order to achieve the goal of reorganization as long as it otherwise complies with the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 1123(b)(6) (2006) (stating that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title").

Section 1123(a) of the Bankruptcy Code sets forth the mandatory provisions that must be included in a plan. First and foremost, the plan must designate classes of claims subject to § 1122 of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1) (2006).[4] The plan must propose the same treatment for each claim included within a class unless the holder of a particular claim consents to less favorable treatment. 11 U.S.C. § 1123(a)(4) (2006). Claims classification is important to the plan confirmation process because creditors vote to accept or reject a plan of reorganization by class. 11 U.S.C. § 1126(c) (2006). A plan will be deemed accepted by a class

---

[4] In addition to designating classes of claims, the plan must also identify the classes of claims that are not impaired under the plan and specify the treatment that those impaired classes will receive under the plan. 11 U.S.C. §§ 1123(a)(2), (a)(3) (2006).

3

of impaired claims if it is accepted by more than one-half in number of claimants that hold at least two-thirds in amount of allowed claims that have voted on the plan. *Id.*

Section 1122(a) of the Bankruptcy Code permits a plan proponent to "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." While §1122(a) requires that all claims in a class be substantially similar, it does not "require that all substantially similar claims be placed within the same class." *Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII)*, 961 F.2d 496, 502 (4th Cir. 1992); *In re Woodbrook Assocs.,* 19 F.3d 312, 318 (7th Cir. 1994) ("Section 1122 does not expressly forbid the separate classification of similar claims."). Nevertheless, the court in *Bryson* cautioned that:

> Although the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case, this discretion is not unlimited. There must be some limit on the debtor's power to classify creditors. . . . The potential for abuse would be significant otherwise. . . . If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed.

*Bryson*, 961 F.2d at 502. (quoting *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990)). Substantially similar claims should be separately classified only "for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *Bryson*, 961 F.2d at 502 (citations omitted). If a plan proponent can articulate legitimate differences among otherwise substantially similar claims and if separate classification is in the best interest of creditors and will foster reorganization, then separate classification may be proper.[5]

---

[5] Some difference in the treatment of unsecured claims must have been contemplated by Congress, or the provisions for classifying claims under 11 U.S.C. § 1122 would be superfluous and purposeless. *In re AG Consultants Grain Div., Inc*, 77 B.R. 665, 674 (Bankr. N.D. Ind. 1987); *In re Huckabee Auto Co*., 33 B.R. 132, 137 (Bankr. M.D. Ga. 1981) (citations omitted) (observing that although the repealed Bankruptcy Act required that substantially similar

4

The Tort Claimants argue that their Tort Claims are substantially similar to the Liquidated General Unsecured Claims and, therefore, they should be placed in the same class. The Tort Claimants contend that the Debtor seeks to classify their Tort Claims separately from Liquidated General Unsecured Claims to manipulate class voting.[6] The Tort Claimants point out that whereas the Liquidated General Unsecured Claims total approximately $627,381.95, their claims exceed $13,000,000. As the claims of the Tort Claimants comprise more than two-thirds in amount of the Debtor's general unsecured debt, the Tort Claimants contend that they should be able to out vote all of the other unsecured creditors in the common class. The holders of the Liquidated General Unsecured Claims will never be able to get the requisite two-thirds in dollar amount of the claims required to approve a plan without the support of the Tort Claimants. The Tort Claimants object to the separate classification because it will deprive them of their perceived veto power over the Debtor's plan.

---

claims be classified together, the Bankruptcy Code did not contain a similar requirement). Separate classification of similar claims has been upheld in many contexts. *See, e.g.*, *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661–63 (6th Cir. 2002) (foreign claims could be classified separately from domestic claims); *In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305, 1321 (7th Cir. 1995) ("Because the confirmation of this Plan affects PSI's interests both with respect to its settlement of other litigation between it and Wabash and with respect to its ongoing business relationship with Wabash, its stake in the Wabash reorganization differs significantly enough from that of the other unsecured creditors to warrant the separate classification of its claims."); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)*, 800 F.2d 581 (6th Cir. 1986) (separate classification of employee and trade creditors approved); *In re Snyders Drug Stores, Inc.*, 307 B.R. 889, 893–94 (Bankr. N.D. Ohio 2004) (allowing for separate classification of trade creditors from landlords' claims because the "debtor intends to do business with some or most of . . . [the trade] creditors, either in the near future or the long term . . . [, but] . . . [t]here is no similar potential for an ongoing relationship with the . . . landlords."); *In re Trimm, Inc.*, No. B-97-16637-C-11D, 2000 WL 33673795, at *5–6 (Bankr. M.D.N.C. Feb. 17, 2000) (finding that the debtor had provided "legitimate business reasons" for separate classification of certain unsecured creditors "essential to the ongoing operation and reorganization of the [debtor's] business"); *In re White Horse Grain Co.*, 60 B.R. 16 (Bankr. E.D. Pa. 1986) (Bailment creditors could be classified separately from other unsecured creditors).

[6] The Tort Claimants cite *Phoenix Mutual Life Ins. Co. v. Greystone III, Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274 (5th Cir. 1991), in support of their position that the Debtor cannot classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan. Although separate classification of similar claims may not be prohibited, it "may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *Greystone,* 995 F.2d at 1279. *See also Bryson*, 961 F.2d at 502 (citations omitted).

The Court is not convinced that separate classification of the Tort Claims will decrease the voting power of the Tort Claimants. The argument advanced by the Tort Claimants assumes that they are each the holder of an allowed claim. Section 1126(a) of the Bankruptcy Code provides that only holders of claims allowed under § 502 of the Bankruptcy Code may vote on the plan. Claims for which a proof of claim is filed and to which no party objects are deemed allowed. 11 U.S.C. § 502(a) (2006). But once the Debtor objected to the proofs of claim filed by the Tort Claimants, those claims were no longer allowed claims under § 502 of the Bankruptcy Code. Unless this Court allows the Tort Claims temporarily in some estimated amount, the Tort Claimants are not entitled to vote on the Plan regardless of the classification of their claims. *Jacksonville Airport, Inc. v. Michkeldel, Inc*., 434 F.3d 729, 731–32 (4th Cir. 2006). The motivation to secure the vote of an impaired, assenting class of claims in order to obtain a confirmable plan is simply not present in this case.[7]

Legitimate reasons exist in this case for the separate classification of the Tort Claims from the Liquidated General Unsecured Claims. The Tort Claims are contingent, unliquidated, disputed claims. For the most part, the Debtor does not dispute the existence of the Liquidated General Unsecured Claims or the amounts of those claims. The Debtor does dispute (both as to liability and amount) the unliquidated Tort Claims and has filed objections to the proofs of claim

---

[7] The voting manipulation of which the court disapproved in *Bryson* was the attempt by the debtor to artificially create an impaired class of creditors that would vote to accept the plan. The debtor has an incentive to manipulate a classification scheme because the affirmative vote of at least one noninsider impaired class of claims is necessary in order to cramdown a plan over the objection of a dissenting class of creditors. *See* 11 U.S.C. §§ 1129(a)(10), (b)(1) (2006). The Fifth Circuit has coined a phrase referred to as the "one clear rule . . . thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Greystone,* 995 F.2d at 1279. But as one court has observed, the characterization of a plan proponent's efforts as "gerrymandering" is pejorative and falsely conclusive. "Every plan proponent creates its classification scheme with the goal of maximizing the probability that its plan will be confirmed." *In re Bloomingdale Partners,* 170 B.R. 984, 996 (Bankr. N.D. Ill 1994). And even *Greystone* condones separate classification "for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *Greystone*, 995 F.2d at 1279.

6

filed by the Tort Claimants. No court has rendered a judgment in favor of any of the Tort Claimants. None of the Tort Claims has a presently quantifiable value.

Other courts have held that unliquidated, disputed claims can be classified separately from undisputed, liquidated claims.[8] *See In re Adelphia Commc'ns Corp*, 368 B.R. 140, 247 (Bankr. S.D.N.Y. 2007) (permitting separate classification of generally liquidated trade claims and other unsecured claims which were mostly unliquidated litigation and rejection damages because "[c]lassifying Trade Claims apart from Other Unsecured Claims insulates the former against the risk that reserves for the latter are not capable of precise estimation"), *appeal dismissed*, 367 B.R. 84 (S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007); *In re U.S. Mineral Prods. Co.*, No. 01-2471 (JKF), 2005 WL 5898300, at * 23 (Bankr. D. Del. Nov. 29, 2005) ("The Plan properly classifies Litigation Claims in a separate class.") (citations omitted); *In re Dow Corning Corp.*, 244 B.R. 634, 647 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002) ("Moreover, there seems to be little dispute that unsecured claims can be substantially dissimilar in nature. In this case for instance, there is no question that while disputed and unliquidated personal injury breast-implant claims and undisputed and liquidated commercial claims are both unsecured, they may be separately classified."); *In re Gen. Teamsters, Warehousemen & Helpers Union Local 890*, 225 B.R. 719, 735 (Bankr. N.D. Cal. 1998) (stating that a plan does not discriminate

---

[8] The Court would note that the separate classification depends more upon the contingent, unliquidated nature of the Tort Claims than it does on their disputed nature. Many courts have held that disputed claims cannot be classified separately from undisputed claims for that reason alone. *See Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810 (6th Cir. 1990); *In re Paolini*, 312 B.R. 295, 314 (Bankr. E.D. Va. 2004) ("Courts who have considered whether disputed claims may be properly classified separately from undisputed claims of a similar nature have concluded the existence of a dispute over claim validity does not support a separate classification.") (citations omitted); *In re Porcelli*, 319 B.R. 8, 11 (Bankr. M.D. Fla. 2004) ("Since the legal status of the claim and not its disputed status is the appropriate focus of classification, the segregation of unsecured claims that are disputed is improper.") (citing *In re Midway Invs., Ltd.*, 187 B.R. 382, 392 (Bankr. S.D. Fla. 1995)). Because the Tort Claims are both disputed *and* unliquidated, those cases are distinguishable and separate classification is proper.

7

unfairly as to classification when there were three classes of unsecured nonpriority creditors: convenience claims, undisputed and liquidated contract claims, and disputed and unliquidated tort claims); *In re Rochem, Ltd.*, 58 B.R. 641, 643 (Bankr. D.N.J. 1985) (approving discriminatory treatment of an unliquidated tort claim and trade claims). *See also, In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) ("We immediately note the reasonableness of distinguishing the claims of physicians, medical malpractice victims, employee benefit plan participants, and trade creditors.").

Practical reasons justify separate classification. First, without separate classification, the Debtor's ability to reorganize successfully is severely imperiled. Personal injury claimants are entitled to have their claims determined by a jury in the United States District Court. This Court does not have the jurisdiction to liquidate the Tort Claims. *See* 28 U.S.C. § 157(b)(5) (Supp. V 2005) ("The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."). If the Court were to allow these three medical malpractice claims to be liquidated prior to voting on any plan of reorganization, there would be an unreasonable delay in the debtor's reorganization process. Liquidation of these three claims will take months if not years to complete. The creditors holding Liquidated General Unsecured Claims would be held hostage to the litigation timetable. Such delay in the plan confirmation process would most likely eliminate any prospect that the Debtor may have for reorganization.

Second, placing the Tort Claims in the same class as the Liquidated General Unsecured Claims when their true value is not known would unduly prejudice one or the other of either the Tort Claimants or the creditors holding Liquidated General Unsecured Claims. The Court has no

8

mechanism for determining the true value of the Tort Claims without liquidation, and may undervalue the Tort Claims and give the Tort Claimants less voting power than they truly deserve, or the Court may overvalue the Tort Claims and give the holders of the Liquidated General Unsecured Claims less voting power than they are entitled to receive.  On the other hand, the separate classification of the Tort Claims from the General Unsecured Claims for voting purposes will not affect the ability of the Tort Claimants to ratably share in the proceeds of the plan.

Finally, there is serious question whether the bankruptcy estate could bear the cost of liquidating the three Tort Claims.  The trials may be prohibitively expensive.  The crushing financial burden of defending these claims will necessarily diminish the amount of funds that the Debtor has to pay into the plan possibly even to the extent that there would be no funds remaining in the estate.  The Debtor might be left with the inability to reorganize at the end of the day.  Both the time and the cost associated with the litigation that will be necessary to fully liquidate the three medical malpractice claims make it impractical for the Debtor to reorganize without the separate classification of the Tort Claims for voting purposes.[9]  For all of these reasons, placing the Tort Claims in a separate class from the General Unsecured Claims is appropriate.

Having determined that the final adjudication of the Tort Claims will unduly delay the administration of this estate, the Court is left to estimate the claims for purposes of allowance. 11 U.S.C. § 502(c) (2006) ("There shall be estimated for purpose of allowance under this section – any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be,

---

[9] The Court is not relying on § 1122(b) of the Bankruptcy Code in making its decision.  11 U.S.C. § 1122(b) (2006) ("A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.").  The separate classification is not permissible for administrative convenience.  Rather the Debtor has no viable chance for reorganization if he is forced to liquidate each of these Tort Claims prior to having a plan confirmed.

would unduly delay the administration of the case"). While § 157(b)(2)(B) of title 28 excludes the liquidation or estimation of personal injury tort claims against the estate as a core proceeding for purposes of distribution in a bankruptcy case, it does not prohibit a bankruptcy court from estimating contingent or unliquidated personal injury tort claims for purposes other than distribution, such as for voting purposes under a proposed plan. As § 1126(a) of the Bankruptcy Code permits only holders of allowed claims to vote to accept or reject a plan, and as the Debtor has objected to the Tort Claims thereby precluding the Tort Claimants from voting on the Plan, the Court must estimate those claims for voting purposes if they are to be permitted to vote on the Debtor's plan. Bankruptcy Rule 3018(a) provides that in such circumstances the bankruptcy court "may temporarily allow the claim . . . in an amount which the court deems proper for the purpose of accepting or rejecting a plan."[10]

The Court must find some practical way in which to estimate the Tort Claims for voting purposes. Section 502(c) provides no guidance as to the means or manner by which the Court should estimate the claims. The case law suggests that bankruptcy courts may use "whatever method is best suited to the particular contingencies at issue." *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982). Liquidating the tort claims through nonbinding mini trials would be prohibitively expensive and time-consuming. But because the Tort Claims are to be classified separately, it is totally unnecessary. Once placed in the separate class, the weight to be accorded to each claimant's vote by virtue of the amount of the claimant's respective claim will impact only on the other similarly situated claimants. Estimating the correct amount for each Tort Claim becomes less important than determining that each be allowed in the same amount. In chapter 11 cases involving mass tort claims, bankruptcy courts have allowed each timely filed

---

[10] The temporary allowance is for voting on the plan and not for any other purpose.

tort claim in the same amount. Some courts have estimated the claims at one dollar each. *See, e.g.*, *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 843 F.2d 636, 646–47 (2nd Cir. 1988) (finding that it was at most harmless error for the bankruptcy court to estimate the claims at one dollar each); *In re Physicians Specialty Hosp. of El Paso East*, *LP*, No. 07-30633-LMC, 2008 WL 2714370, at *2 (Bankr. W.D. Tex. July 1, 2008) (estimating a creditor's claim at one dollar for voting purposes because the value given to the claim was unimportant). That way the holders of each contingent claim are able to express their acceptance or rejection of the plan on an equal footing, although their claims remain unliquidated. This Court, therefore, will estimate the Tort Claims at one dollar each.[11] This will prevent the Debtor from having to incur the costs of liquidating each of these claims prior to confirmation of the plan, and it will cause no prejudice to the Tort Claimants because their claims will each be accorded equal weight within their own separate class.

Though separate classification and claims estimation effectively eliminate the perceived veto power over the Debtor's plan to which the Tort Claimants believe they are entitled, it is important to note that there still remain important safeguards built into the Bankruptcy Code that serve to protect the interests of the Tort Claimants. If the Tort Claimants as a class vote to reject the plan, the debtor can only get his plan confirmed by way of cramdown under § 1129(b) of the Bankruptcy Code. Two conditions must be satisfied to effect a cramdown. First, all requirements of § 1129(a) of the Bankruptcy Code must be met (save for the plan's acceptance by each impaired class of claims or interests). *See* 11 U.S.C § 1129(b)(1) (2006). Critical

---

[11] The Court could just as easily estimate the Tort Claims at the opposite end of the spectrum. Virginia Code Ann. § 8.01–581.15 limits recovery for a medical malpractice claim. The Tort Claims aggregate more than $13,000,000, far in excess of the capped exposure. The Court could have estimated each of the Tort Claims at the maximum amount. As the estimation is for voting purposes only, the actual amounts of the Tort Claims make little difference, so long as the relative amounts remain equal.

11

among these requirements are the conditions that the plan be accepted by at least one class of impaired creditors, *see* 11 U.S.C. § 1129(a)(10) (2006),[12] and satisfy the "best-interest-of-creditors" test, *see* 11 U.S.C. § 1129(a)(7) (2006).[13]  Additionally, a debtor's plan may be confirmed over the objection of an impaired creditor class only if "the plan does not discriminate unfairly,[14] and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).[15]  *Bank of Am. Nat'l Trust and Sav. Assoc. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441, 1119 S. Ct. 1411, 1415–16, 143 L. Ed. 2d 607 (1999).

Because the Tort Claims are unliquidated, disputed debts, the Liquidated General Unsecured Claims are not, and practical reasons exist for their separate classification for voting purposes, it is permissible for the Debtor to classify them separately.  Likewise, the Court may estimate the Tort Claims for voting purposes only because doing so will permit the Tort Claimants to participate in the plan approval process, will prevent the Debtor from having to

---

[12]  In a cramdown context, the proponent of a plan has the burden to establish by a preponderance of the evidence compliance with the requirements of both § 1129(a) (except § 1129(a)(8) requiring acceptance by or no impairment of each class) and § 1129(b). 11 U.S.C. § 1129(b)(1) (2006); 7 Collier on Bankruptcy ¶ 1129.02[4] (Lawrence P. King ed., 15th ed. rev 2004) ("If nonconsensual confirmation is sought, the proponent of such plan will have to satisfy the court that the requirements of section 1129(b) are also met… [T]he plan proponent bears the burden of proof by a preponderance of the evidence"). Section 1129(a)(10) sets forth the requirement for at least one accepting class. Accordingly, a plan cannot be confirmed by cramdown on all impaired creditors. *Bryson*, 961 F.2d at 501 (citations omitted). Thus, the Debtor will have to secure the acceptance of his plan by the class of Liquidated General Unsecured Claims in order to confirm his plan over the objection of the class of Tort Claimants.

[13]  The Tort Claimants must receive at least as much as they would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

[14]  The Code's inclusion of the unfair discrimination standard in § 1129(b)(1) was intended to deal with claims having the same legal rights against the debtor, but which are properly classified separately. "[A] plan may separately classify different claims in a way that satisfies section 1122 and section 1129(a)(1), but run afoul of unfair discrimination under section 1129(b)(1)." 7 Collier on Bankruptcy ¶ 1129.04[3][c] (Lawrence P. King ed., 15th ed. rev 2004).

[15]  In order for a plan of reorganization to be fair and equitable to a class of unsecured creditors, it must comply with the absolute priority rule codified in 11 U.S.C. § 1129(b)(2)(B)(ii) of the Bankruptcy Code. *See Bryson,* 961 F.2d at 503 (citations omitted). It would appear from the 2005 amendments to the Bankruptcy Code that in the case of a nonconsensual plan of an individual, the individual debtor must either pay each claim the value, as of the effective date, of the allowed amount of such claim, or must distribute to all claimants not less than the individual debtor's full projected disposable income for at least five years. 11 U.S.C. §§ 1129(a)(15), (b)(2)(B) (2006).

liquidate each of the claims prior to confirmation of the plan, and will not prejudice the rights of the Tort Claimants.  A separate order shall issue.

ENTERED: _____

       /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Derron M. Simon
13606 Goswick Ridge Court
Midlothian, VA  23114

Douglas A. Scott
1805 Monument Avenue, Suite 311
Richmond, VA  23220

Augustus C. Epps, Jr.
Christian & Barton, LLP
909 E. Main Street, Suite 1200
Richmond, VA  23219-3905

David K. Spiro
Cantor Arkema, P.C.
P. O. Box 561
Richmond, VA  23218-0561

William C. Parkinson, Jr.
5310 Markel Road, Suite 200
Richmond, VA  23230

Robert B. Van Arsdale
Assistant U. S. Trustee
600 East Main Street, Suite 301
Richmond, VA  23219